IN THE MATTER OF: APPEAL OF THE FORSYTH COUNTY TAX SUPERVISOR REGARDING CERTAIN PROPERTY OWNED BY WAKE FOREST UNIVERSITY

No. 8010PTC844

(Filed 21 April 1981)

Taxation § 22.1– ad valorem taxation – university's football parking lot – rental to corporation – portion exempt from taxation

Where Wake Forest University granted a corporation an easement to use a football stadium parking lot for employee and visitor parking and general access to the corporation's headquarters building, the N.C. Property Tax Commission properly determined that a portion of the parking lot not regularly used by the corporation is wholly and exclusively used by Wake Forest University for educational purposes and is exempt from ad valorem taxation under G.S. 105-278.4(c).

APPEAL by respondent from an order of the North Carolina Property Tax Commission entered 24 March 1980. Heard in the Court of Appeals 12 March 1981.

Wake Forest University is an educational institution whose property generally qualifies for exemption from taxation under G.S. 105-278.4. Wake Forest owns a 48.65 acre tract of land in Winston-Salem, lying between the University's football stadium and the World Headquarters building of R.J. Reynolds Industries, Inc. (Reynolds). The tract of land is generally identified and will be referred to as the Grove's Stadium parking lot. In February, 1976, Wake Forest conveyed to Reynolds a non-exclusive easement and right to use the Grove's Stadium parking lot on a continuing basis for a period of forty years for ingress and egress (to its headquarters building) from adjacent streets, for automotive parking, and for other purposes incident to the Reynolds' business.

The consideration for the granting of the easement was the promise by Reynolds to donate to Wake Forest a sum sufficient to pave a substantial portion of the parking lot. The easement

contains provisions restricting Reynolds from constructing or placing any building on the parking lot other than accessory buildings normally associated with parking lot and stadium operations. The easement also requires Reynolds to maintain the paved portion of the parking lot. By separate agreement, Reynolds agreed to pay any ad valorem taxes assessed against the parking lot.

As of 1 January 1978, Forsyth County determined the appraised value of the Grove's Stadium parking lot to be $1,653,500.00. This figure is not in dispute. The Forsyth County Board of Equalization and Review found a portion (twenty percent) of the parking lot to be exempt from taxation and reduced the tax valuation to $1,113,710.00. Both the County and Reynolds appealed the decision of the County Board of Equalization and Review to the North Carolina Property Tax Commission. The Commission held a hearing and entered an order in which it reduced the tax valuation of the parking lot to $501,171.00. Respondent County has appealed from the Commission's order.

*County Attorney P. Eugene Price, Jr., and Assistant County Attorney Jonathan V. Maxwell, for Forsyth County Tax Supervisor appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by W.F. Maready and Grover G. Wilson, for R.J. Reynolds Industries, Inc., appellee.*

WELLS, Judge.

The basic question before us on this appeal is whether any portion of the Grove's Stadium parking lot qualifies under the "split exemption" statute, G.S. 105-278.4(c). The applicable statute, in pertinent part, is as follows:

§105-278.4. *Real and personal property used for educational purposes.* — (a) Buildings, the land they actually occupy, and additional land reasonably necessary for the convenient use of any such building shall be exempted from taxation if:

(1) Owned by an educational institution . . . ;

(b) Land (exclusive of improvements); and improvements other than buildings, the land actually occupied by such

improvements, and additional land reasonably necessary for the convenient use of any such improvements shall be exempted from taxation if:

    (1)  Owned by an educational institution that owns real property entitled to exemption under the provisions of subsection (a), above;

    (2)  Of a kind commonly employed in the performance of those activities naturally and properly incident to the operation of an educational institution such as the owner; and

    (3)  Wholly and exclusively used for educational purposes by the owner or occupied gratuitiously [*sic*] by another nonprofit educational institution (as defined herein) and wholly and exclusively used by the occupant for nonprofit educational purposes.

(c) Notwithstanding the exclusive-use requirements of subsections (a) and (b), above, if part of a property that otherwise meets the requirements of one of those subsections is used for a purpose that would require exemption if the entire property were so used, the valuation of the part so used shall be exempted from taxation.

. . . .

The order of the Property Tax Commission included the following pertinent findings of fact:

    (2)  Approximately 80% (38.65 acres) of the subject 48.65 acre tract is improved as a parking lot with 2,887 marked parking spaces.

    (3)  The remaining 20% (10 acres) of the property, which is covered with trees and gullies, is fenced off from the parking lot and is not used by either Reynolds or the University.

. . . .

    (6)  The subject parking lot is used by the University to provide parking for persons attending Wake Forest football games and certain other University functions, such as concerts.

(7) Reynolds' employees and visitors use 1,036 (36%) of the 2,887 parking spaces each working day — Monday through Friday.

Respondent Forsyth County assigns as error those findings of fact included in paragraph numbered (7), contending that these findings are not supported by the evidence. The evidence before the Commission on this aspect of the case consisted of exhibits (maps) showing the vicinity, location, and configuration of the property; and the testimony of James T. Barg, the manager of Property Tax Administration for Reynolds and W. Harvey Pardue, Forsyth County Tax Supervisor. Barg, using the exhibits, testified that the area of the paved portion of the property where Reynolds' employees regularly park consists of 1,036 parking spaces, and that this constitutes approximately thirty-six percent of the paved area which includes a total of 2,887 spaces. Pardue testified that the parking lot is used five days a week by Reynolds for employee and visitor parking and for general access to Reynolds' headquarters building, and that on football weekends, the lot is filled with Wake Forst football traffic. This evidence clearly supports the disputed finding of fact, and the finding is therefore binding upon us on review. *In re Appeal of Amp. Inc.*, 287 N.C. 547, 215 S.E. 2d 752 (1975).

The heart of respondent's argument is that the Commission's findings of fact and the evidence do not support the Commission's conclusion that the taxable value of the property should be reduced to $501,171.00. For clarity, we quote the conclusionary portion of the Commission's order in its entirety:

CONCLUSION, DECISION AND ORDER
From our review of the applicable law, the evidence and our findings of fact, we conclude and so decide that all of the subject property except the portion actually used by Reynolds is exempt from taxes under the provisions of G.S. 105-278.4.

The parking lot is owned by the University — a qualifying owner — and used by it in connection with its athletic program. An athletic program is an integral and important part of the educational program of practically every college or university. As is the case with most other football facilities, also, the subject parking lot is actually used by the

university only a limited number of times each year. This limited use, however, does not in any way diminish the need for the facility on those occasions. Thus, the parking lot would be required by the University for its purposes whether or not Reynolds also made use of it.

Since Reynolds' use of a portion of the parking facility cannot be construed as incidental, we further conclude that this portion is not wholly and exclusively used by the owner for educational purposes.

Accordingly, we hold that 36% of the 38.65 acres improved as a parking lot and of the improvements thereon is subject to property taxes. The amount of the taxable property is $501,171 — $363,658 for the land and $137,513 for the improvements.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the decision of the Forsyth County Board of Equalization and Review is reversed to the extent that the valuation established thereby exceeds $501,171.

IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that the Forsyth County taxing officials reduce the taxable value of the subject property to $501,171 and enter said reduced valuation in the tax records of the County.

Respondent County contends that in order to qualify for exemption under the statute, Wake Forest must either (a) *wholly and exclusively* use all of the property, or (b) *wholly and exclusively* use a portion of the property, in which case only that portion so used qualifies for exemption. Respondent argues that because the easement agreement includes all of the property and because Reynolds' employees and visitors have free access to the entire parking lot, none of the property qualifies for exemption. We do not agree.

The decisions of our appellate courts have consistently recognized and enunciated the principle that it is not the nature or characteristic of the owning entity which ultimately determines whether property shall be exempt from taxation, but it is the use to which the property is dedicated which controls. *See, In re Forestry Foundation*, 296 N.C. 330, 250 S.E. 2d 236 (1979); *Redevelopment Comm. v. Guilford County*, 274 N.C. 585, 164 S.E.

In re Wake Forest University

2d 476 (1968); *Seminary, Inc. v. Wake County,* 251 N.C. 775, 112 S.E. 2d 528 (1960); *Rockingham County v. Elon College,* 219 N.C. 342, 13 S.E. 2d 618 (1941); *In re Land and Mineral Co.,* 49 N.C. App. 605, 272 S.E. 2d 878 (1980); *but see, In re University of North Carolina,* 300 N.C. 563, 268 S.E. 2d 472 (1980) (property owned by the State is exempt from ad valorem taxes solely by reason of State ownership regardless of the use to which the property is put). While the agreement between Wake Forest and Reynolds gives Reynolds an easement in and to the entire tract, the evidence is undisputed that Reynolds' *use* of the property is limited in both time and space. Conversely, the evidence is undisputed that Wake Forest is the dominant user of the portion of the property exempted by the Commission, and that in fact, on a regular basis, it uses the entire improved portion of the property. We assume, as no one has argued to the contrary, that the use of the lot for parking for Wake Forest football games is for educational purposes. The factual situation here is radically different from that found in *In re Forestry Foundation, Inc., supra,* where evidence clearly showed that the entire property was being used primarily for non-exempt purposes.

While our courts have consistently held that tax exemption statutes must be strictly construed against exemption, they have also held that such statutes should not be given a narrow or stingy construction. *See, Cemetery, Inc. v. Rockingham County,* 273 N.C. 467, 469, 160 S.E. 2d 293, 295 (1968) and *Wake County v. Ingle,* 273 N.C. 343, 346, 160 S.E. 2d 62, 64 (1968) and cases cited in those opinions; *see also, In re Taxable Status of Property,* 45 N.C. App. 632, 263 S.E. 2d 838, *disc. rev. denied,* 300 N.C. 374, 267 S.E. 2d 684 (1980). The agreeable and practical parking arrangement between Reynolds and Wake Forest obviously has great benefit for both parties, and we believe that it fits reasonably and clearly within the purview of the "split-exemption" portion of the statute as set out in G.S. 105-278.4(c).

The effect of the Commission's order was to find and conclude that within the meaning of the statute, that portion of the property not regularly used by Reynolds is wholly and exclusively used by Wake Forest for educational purposes. We hold that when viewed in the light of the entire record, *see Thompson v. Board of Education,* 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977); *In re Land and Mineral Co., supra; In re Appeal of Amp, Inc., supra,* the Commission's findings, inferences, conclusions,

and order are supported by competent, material, and substantial evidence and therefore may not be reversed or modified by us.

Affirmed.

Judges VAUGHN and BECTON concur.