IN RE UNIV. FOR THE STUDY OF HUMAN GOODNESS & CREATIVE GRP. WORK

[159 N.C. App. 85 (2003)]

IN THE MATTER OF: THE UNIVERSITY FOR THE STUDY OF HUMAN GOODNESS
AND CREATIVE GROUP WORK

No. COA02-831

(Filed 15 July 2003)

**Taxation— ad valorem—nonprofit corporation—restaurant operation—educational exemption**

The Property Tax Commission did not err by concluding that taxpayer nonprofit corporation's operation of a restaurant was not a use that qualified as an educational purpose and therefore was not exempt from ad valorem taxation pursuant to N.C.G.S. § 105-278.4, because: (1) there was substantial evidence to support the Commission's findings and conclusions that the restaurant is not of a kind commonly employed in or naturally and properly incident to the operation of an educational institution; and (2) the property was not held wholly and exclusively for educational purposes on the date of taxpayer's application for exemption since the students were not pursuing a restaurant-related degree while working at the restaurant and taxpayer was not teaching construction even though the students were renovating the restaurant building.

Appeal by taxpayer from final decision dated 16 January 2002 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 20 February 2003.

*W. Thomas White for taxpayer-appellant.*

*Office of Forsyth County Attorney, by Assistant County Attorney B. Gordon Watkins, III, for Forsyth County-appellee.*

McGEE, Judge.

The University for the Study of Human Goodness and Creative Group Work (taxpayer) filed an application for property tax exemption for the year 2000 with the Forsyth County Tax Office dated 17 May 2000. The Forsyth County Board of Equalization and Review (the Board) denied taxpayer's application on 21 September 2000. Taxpayer gave notice of appeal to the North Carolina Property Tax Commission (the Commission) in a letter dated 30 September 2000.

Evidence before the Commission tended to show that taxpayer is a North Carolina nonprofit corporation with a Section 501(c)(3) fed-

eral income tax exemption. Susan Baggett (Ms. Baggett), a faculty member and vice president of taxpayer, testified that taxpayer was established as an educational institution focusing on community service and group work. Taxpayer has a three-member teaching group and provides learning opportunities in entrepreneurship, group work, and communication to its students. Taxpayer has course offerings consisting of four curriculum tracks. Full-time students receive free room, board, and tuition and receive a certificate upon completion of taxpayer's one year program. Taxpayer's program is not accredited by any other organization.

On 1 January 2000, taxpayer owned property known as the "California Fresh Buffet" (the restaurant) at Peters Creek Parkway, Winston-Salem, North Carolina. The restaurant was not open for business on 1 January 2000 but did open on 21 February 2000. During the year 1999, students and faculty spent 15,098 hours of unpaid time renovating the property for use as a restaurant and learning laboratory. The renovations were used as a teaching experience and students were assigned entrepreneurial tasks that related to their class discussions. Taxpayer hired contractors to conduct renovations for which the volunteers lacked the requisite skills to complete, such as plumbing, heating, and roofing.

Taxpayer intended to use the restaurant as a learning environment "for people to assimilate what they are learning in theory and be able to practice that effectively when they go out." The objective was for students to work in an environment where people had to deal with issues of "leadership, communication, time management, [and] money management, every single day." Ms. Baggett testified that the restaurant would not exist if it were not for taxpayer's educational purposes.

Ms. Baggett testified that taxpayer did not anticipate making a profit and that no one involved with the restaurant had experience in the restaurant business prior to its opening. However, during 2000, the restaurant had excess revenues of approximately $200,000 after depreciation. Excess revenues that were generated were contributed to various charities and used to pay taxpayer's internal debt on the building. Taxpayer holds the restaurant out to the public as a learning laboratory and does not pay for restaurant advertising.

William A. Rodda (Mr. Rodda), a Forsyth County collector and assessor, was stipulated as an expert in tax collection and assessment and testified for Forsyth County. It was Mr. Rodda's expert opinion

that the operation of a restaurant was not a use that was eligible for tax exemption because it was not an activity incidental to an educational institution and the restaurant was located on "restaurant row" rather than taxpayer's campus. Mr. Rodda also stated that he believed that the restaurant was being operated predominantly as a business and that there was a material amount of "business and patronage with the general public." He stated that he did not believe the property was used wholly and exclusively for educational purposes by taxpayer and believed any educational activity was incidental.

Dr. Carolynn Blount Berry (Dr. Berry) was accepted as an expert in the field of education and accreditation and also testified for Forsyth County. In Dr. Berry's opinion, the restaurant was not part of an educational institution and there was no evidence of curriculum, learning outcomes, or measurement of outcomes. She stated that working forty-five hours a week at a restaurant was not educational when students were not pursuing a degree related to restaurants. Dr. Berry also testified that the characteristics of an educational institution included: formal curriculum that supports defined and assessable student learning outcomes, recognized degrees, qualified faculty, and recognition by peer institutions. She also opined that taxpayer was not using the building wholly and exclusively for educational purposes. Dr. Berry stated that she did not believe leasing or renovating property was educational in nature and saw no evidence that taxpayer was teaching construction. She also testified that experiential education was important and widely used in her educational experience.

After hearing evidence, the Commission made findings of fact that included the following:

8. The operation of a restaurant is not a use that qualifies under the statutes of North Carolina as an educational purpose.

9. The Taxpayer, University for the Study of Human Goodness and Creative Group Work did not show that the subject property is wholly and exclusively used for an educational purpose.

The Commission's conclusions of law included:

4. The subject property is used by the Taxpayer as a restaurant that serves the general public. As such, the Taxpayer has not shown that subject property meets the statutory requirement of being wholly and exclusively used for an educational purpose.

5. The Taxpayer has failed to prove that its use of the subject property in question was wholly and exclusively for an educational purpose.

6. The subject property, the California Fresh Buffet, is not of a kind commonly employed in or naturally and properly incident to the operation of an educational institution.

7. The subject property is not used for an educational purpose and is not entitled to exemption pursuant to G.S. 105-278.4.

8. The Taxpayer's exemption requests for the subject property must be denied under the North Carolina General Statutes.

The Commission affirmed the Board's decision denying the exemption in an order dated 16 January 2002. Taxpayer appeals.

The standard of review of decisions of the Commission is governed by N.C. Gen. Stat. § 105-345.2 (2001). This Court is responsible for reviewing the "whole record" to determine if the Commission's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error.

N.C.G.S. § 105-345.2(b)-(c). The whole record test requires the reviewing court to determine whether the Commission's decision is supported by substantial evidence. We will review all questions of law *de novo*, *In re Appeal of Parsons*, 123 N.C. App. 32, 38-39, 472 S.E.2d 182, 187 (1996), and apply the whole record test where the evidence is conflicting to determine if the Commission's decision has any rational basis, *In re Southview Presbyterian Church*, 62 N.C.

App. 45, 47, 302 S.E.2d 298, 299, *disc. review denied,* 309 N.C. 820, 310 S.E.2d 354 (1983).

> The "whole record" test does not permit the appellate court to substitute its judgment for that of the agency when two reasonable conflicting results could be reached, but it does require the court, in determining the substantiality of evidence supporting the agency's decision, to take into account evidence contradictory to the evidence on which the agency decision relies.

*Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau,* 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). If the whole record supports the Commission's findings, the decision of the Commission must be upheld. *In re Appeal of Southeastern Bapt. Theol. Seminary, Inc.,* 135 N.C. App. 247, 254, 520 S.E.2d 302, 307 (1999).

Taxpayer argues that the Commission erred in concluding that the restaurant was not of the kind commonly employed or incidental to the operation of an educational institution. Taxpayer also argues the Commission erred in concluding that the property was not used wholly and exclusively for an educational purpose and therefore was not exempt from ad valorem taxation. We disagree and affirm the decision of the Commission for the reasons stated herein.

Taxpayer argues it is entitled to an educational exemption, pursuant to N.C. Gen. Stat. § 105-278.4 (2001), which states:

(a) Buildings, the land they actually occupy, and additional land reasonably necessary for the convenient use of any such building shall be exempted from taxation if:

   (1) Owned by an educational institution (including a university, college, school, seminary, academy, industrial school, public library, museum, and similar institution);

   (2) The owner is not organized or operated for profit and no officer, shareholder, member, or employee of the owner or any other person is entitled to receive pecuniary profit from the owner's operations except reasonable compensation for services;

   (3) Of a kind commonly employed in the performance of those activities naturally and properly incident to

the operation of an educational institution such as the owner; and

(4) Wholly and exclusively used for educational purposes by the owner . . . .

The burden of establishing entitlement to a property tax exemption is on the taxpayer. N.C. Gen. Stat. § 105-282.1(a) (2001). The Commission found as a fact and concluded that taxpayer had failed to prove that its use of the restaurant property was wholly and exclusively for an educational purpose. After a review of the whole record, we agree that the record contains substantial evidence supporting the Commission's findings and conclusions that the restaurant is "not of a kind commonly employed in or naturally and properly incident to the operation of an educational institution."

The evidence showed that taxpayer purchased the restaurant property for use as a learning laboratory and that students volunteered in renovating the premises for use as a restaurant. Mr. Rodda offered expert testimony that the operation of a restaurant was not an activity incidental to an educational institution. He noted that the restaurant was located on "restaurant row" in Winston-Salem rather than taxpayer's campus. Dr. Berry also offered expert testimony that there was no evidence of curriculum, learning outcomes, measurement of outcomes, or other characteristics generally attributable to an educational institution. She also stated that working forty-five hours a week at a restaurant was not educational when students were not pursuing a degree related to restaurants or the food industry. We do not believe the uniqueness of the property or taxpayer's educational focus means the property was of the type commonly used or incidental to the operation of an educational institution. We hold that the property was not used in a manner that was naturally and properly incidental to the operation of an educational purpose.

We also conclude that the record contains evidence supporting the Commission's finding and conclusion that the property was not used "wholly and exclusively for an educational purpose." N.C. Gen. Stat. § 105-278.4(f) defines educational purpose as one that "has as its objective the education or instruction of human beings; it comprehends the transmission of information and the training or development of the knowledge or skills of individual persons." Our Courts have stated that " 'it is not the nature or the character of the owning entity which ultimately determines whether property shall be exempt from taxation, but it is the use to which the property is dedicated

which controls.'" *In re Appeal of Atlantic Coast Conference*, 112 N.C. App. 1, 9-10, 434 S.E.2d 865, 870 (1993) (quoting *In re Forsyth County Tax Supervisors*, 51 N.C. App. 516, 520, 277 S.E.2d 91, 94, *disc. review denied*, 303 N.C. 544, 281 S.E.2d 391 (1981)), *aff'd*, 336 N.C. 69, 441 S.E.2d 550 (1994).

There are several cases that assist us in determining the validity of taxpayer's claim. Our Supreme Court recently held in *In re Appeal of the Maharishi Spiritual Ctr. of Am.*, 357 N.C. 152, 579 S.E.2d 249 (2003), that our Court erred in reversing a Commission's decision in *In re Appeal of the Maharishi Spiritual Ctr. of Am.*, 152 N.C. App. 269, 569 S.E.2d 3 (2002), that denied an exemption for property owned by a nonprofit organization that offered educational programs in meditation. The property in question was used for related educational programming and meditating. *Id.* at 271-72, 569 S.E.2d at 5. Specifically, the evidence showed that the organization offered "training by self-study, lecture and practical experience" and that "training or development of skills of individuals occurs at the Spiritual Center." *Id.* at 280, 569 S.E.2d at 10. Testimony in the case also showed that students were given less guidance than in classes at other universities because of the focus on experiential learning. *Id.* at 281, 569 S.E.2d at 10.

In adopting Judge Tyson's dissent, the Supreme Court reaffirmed our standard of review and agreed that the Court of Appeals misapplied the standard of review which binds this Court to the Commission's findings and conclusions when supported by substantive evidence, even though there was evidence that would have supported a finding to the contrary. *Id.* at 285, 569 S.E.2d at 12. In concluding that substantive evidence existed in the record to support the Commission's findings, the dissent cited the expert testimony, which stated that the Spiritual Center was not an educational institution and that the practice of meditation eight hours a day did not constitute a learning activity. *Id.* at 285-86, 569 S.E.2d at 12. The center offered some educational activity; however, the primary purpose of the center was not educational. While there was conflicting evidence in the record, this testimony was sufficient to support the Commission's finding that the property was not used "wholly and exclusively" for educational purposes. *Id.* at 286, 569 S.E.2d at 13. Accordingly, this Court was bound by the evidence and the Supreme Court reversed this Court's decision, holding that the taxpayer was not entitled to a property tax exemption.

Forsyth County points us to *In re Forestry Foundation*, 296 N.C. 330, 250 S.E.2d 236 (1979), in support of its decision to deny the exemption. In *Forestry Foundation*, a nonprofit organization owned a forest for the purposes of forestry research, education, and the production and preservation of timber. The Supreme Court held that the property was not held wholly and exclusively for an educational purpose because a paper company occupied the property, utilized it for commercial purposes, and maintained operational control over the forest. *Id.* at 338-39, 250 S.E.2d at 241-42. The Supreme Court reasoned that the commercial use of the property by a party other than the nonprofit organization made the educational use merely incidental to the commercial use. *Id.* Accordingly, the Court denied an exemption.

In *In re Appeal of Chapel Hill Day Care Ctr., Inc.*, 144 N.C. App. 649, 551 S.E.2d 172 (2001), *disc. review denied*, 355 N.C. 492, 563 S.E.2d 564 (2002), our Court held that a day care center that offered educational programming to pre-school children was not a traditional school and not "wholly and exclusively" used for educational purposes. In reaching our decision, our Court noted that the evidence showed the center did not maintain regular school hours, assign homework, or issue report cards. *Id.* at 658, 551 S.E.2d at 178. The evidence also contained testimony that stated the center's teachers were child care providers and that the care provided was custodial in nature. *Id.* at 657-58, 551 S.E.2d at 177-78. Our Court held that the Commission's denial of an exemption was not arbitrary and capricious because the Commission's findings of fact and conclusions of law were supported by competent evidence in denying an exemption. *Id.* at 658, 551 S.E.2d at 178.

We find these cases controlling and agree with the Commission's determination that the property was not held wholly and exclusively for educational purposes on the date of taxpayer's application for exemption. In the case before us, Mr. Rodda offered expert testimony that the restaurant was being operated predominantly as a business and that there was a material amount of business and patronage with the general public. Mr. Rodda stated that taxpayer was not using the property wholly and exclusively for educational purposes and believed any educational activity occurring on the property was incidental. Additionally, Dr. Berry offered expert opinion that taxpayer was not using the building wholly and exclusively for educational purposes. Dr. Berry stated that taxpayer lacked many of the characteristics typical of an educational institution and university. She also

**OLD SALEM FOREIGN CAR SERV., INC. v. WEBB**

[159 N.C. App. 93 (2003)]

stated that working at a restaurant was not educational in nature when students were not pursuing a restaurant-related degree and that renovating a building was not educational when taxpayer was not teaching construction.

This evidence is sufficient to support the Commission's findings and conclusions that the property was not used wholly and exclusively for educational purposes. Accordingly, we are bound by the Commission's finding of fact and conclusion of law even though there is evidence that would have supported a contrary result. *Maharishi*, 152 N.C. App. at 285, 569 S.E.2d at 12. We hold that the property was not used wholly and exclusively for an educational purpose by taxpayer.

After reviewing the whole record, we hold that there was substantial evidence supporting the Commission's order denying an exemption to taxpayer. We affirm the decision of the Commission.

Affirmed.

Judges HUDSON and STEELMAN concur.